|                                                                 |                          |
|-----------------------------------------------------------------|--------------------------|
| UNITED STATES OF AMERICA,                                       |                          |
|     Plaintiff,                                                  | Criminal No. 05-354 (JAF)|
|     v.                                                          |                          |
| HECTOR RENE LUGO-RIOS (01);                                     |                          |
| ELBA GARCIA-PASTRANA (03);                                      |                          |
| FELIPE ROMAN-LOZADA (04);                                       |                          |
| JESUS CARABALLO-ORTIZ (05);                                     |                          |
| LUIS ANDINO-DELBREY (06);                                       |                          |
| FRANCISCO MARTINEZ-IRIZARRY (07);                               |                          |
| JUAN RAMOS-HERNANDEZ (08);                                      |                          |
| ENRIQUE VAZQUEZ-PRESTAMO (09);                                  |                          |
| JORGE L. URBINA-ACEVEDO (10);                                   |                          |
| JUAN ROLDAN-VEGA (11),                                          |                          |
|     Defendants.                                                 |                          |

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

**OPINION AND ORDER**

Before this court are motions from Elba L. García-Pastrana, Juan Ramos-Hernández, and Juan Roldán-Vega under 18 U.S.C. § 3143(a)(1)(2000 & Supp. 2006) for reconsideration of revocation of bail. Docket Document Nos. 441, 445, 455. Defendants request that bail be reinstated so that they may be released pending sentencing. Id.

García, Ramos, and Roldán were indicted, along with seven other co-defendants who do not currently have post-conviction, bail-related motions pending before this court, on October 19, 2005, for violating 18 U.S.C. §§ 2, 371, 669, 982(a)(1), 982(a)(7), and 1956(h). Docket

Criminal No. 05-354 (JAF)                                                -2-

Document No. 2. On October 20, 2005, this court originally granted bail to García, Ramos, and Roldán according to 18 U.S.C. § 3142(c) in the amount of $200,000; $50,000; and $50,000, respectively. Docket Document Nos. 33, 43, 49. On June 16, 2006, a jury found García, Ramos, Roldán, and their seven co-defendants guilty of those charges, and the undersigned revoked bail and ordered their immediate incarceration. Docket Document No. 437.

García, Ramos, and Roldán now move this court to reinstate their bail and allow them to go free pending their sentencing, which has been scheduled to take place September 22, 2006. Docket Document Nos. 439, 441, 445, 455. The government filed an opposition to Defendants' motions on June 23, 2006. Docket Document No. 453.

A convicted defendant has no constitutional right to bail and, in fact, the Bail Reform Act of 1984 establishes a presumption in favor of detaining convicted defendants pending sentencing. United States v. Cátala Fonfrías, 612 F. Supp. 999, 1000 (D.P.R. 1985). A provision introduced by that very same Act, however, provides an exception to that general rule, whereby a convicted defendant can overcome the detention presumption and pursue release pending his or her sentencing. Id. It is that statutory provision at issue today. Codified at 18 U.S.C. § 3143(a)(1), the law states that a person who has been found guilty of an offense and who is awaiting imposition of sentence shall be detained, "unless the court finds by clear and convincing evidence that the person is not likely to flee or pose a

Criminal No. 05-354 (JAF)                                             -3-

danger to the safety of any other person or the community if released on bond pursuant to . . . § 3143(c)."  Convicted defendants who desire to secure their release from prison pending sentencing bear the burden of proof. <u>Cátala Fonfrías</u>, 612 F.Supp. At 1000 (citing Report of the Committee on the Judiciary, United States Senate, 98th Congress, 1st Session, Report No. 98-225, p. 27, U.S. Code Cong. & Admin. News 1984).

We begin by noting that the detention presumption established by the Bail Reform Act of 1984 was partly motivated by the widely held belief that the detention of a criminal defendant immediately after his or her conviction reinforces the deterrent effect of the criminal law by ensuring that the public sees and understands that criminal activity bears consequences. <u>Id.</u> By contrast, allowing a freshly-convicted defendant to stride out of the courtroom and rejoin his or her peers, albeit for a limited time, greatly dilutes this message. <u>Id.</u>  Precisely this reason was advanced by the court at the time we refused to grant bail upon conviction.

García pleads that she needs time to undergo psychiatric treatment in order to prepare herself for prison, and Roldán pleads that he needs time to get his finances in order. <u>Docket Document Nos. 445, 455</u>.  These concerns, which every person awaiting incarceration quite obviously shares, are beside the point. We limit our consideration of the present motions to what the statute requires, which is whether Defendants have met their burden to

Criminal No. 05-354 (JAF)                                              -4-

present the court with clear and convincing evidence that they are not likely to flee or pose a danger to the safety of any other person or the community. 18 U.S.C. § 3143(a)(1). We find that they have not met that burden.

Defendants rather cursorily submit that they do not pose any danger to the safety of any person or the community. While we agree that Defendants certainly do not appear to pose any *physical* danger to members of the community, we must also weigh whether Defendants pose a *pecuniary* threat to the community, and to pecuniary interests of the Union they embezzled funds from. United States v. Masters, 730 F.Supp. 686, 689 (W.D.N.C. 1990)(finding the defendant, who had continued to participate in legally questionable investment schemes throughout his trial, to be a pecuniary danger to the community because the court believed that defendant was "an unrepentant con artist who will continue to prey on any person gullible enough to listen to his sales talk"); United States v. Moss, 522 F.Supp. 1033, 1035 (E.D.Pa. 1981). Given that Defendants have been convicted for embezzlement, money laundering, and more, Docket Document No. 438, we worry that they would, in fact, pose a continuing pecuniary threat to the community if they were released pending sentencing. The Defendants are quite influential in the Union where they served and it is evident that all convicted Defendants still retain the connections to create pecuniary danger to the Union and the Union finances.

We refer to United States v. Provenzano, 605 F.2d 85 (3rd Cir. 1979), for guidance. That case involved a defendant requesting to be released on bail pending appeal after he had been found guilty of corruptly using his position of influence in a labor union for his own pecuniary gain. Id. The Provenzano district court denied the bail petition, pointing to the fact that the defendant's brothers and daughter still held executive union posts as evidence that the defendant had enough influence and opportunity at the union to pose a pecuniary risk to the community were he released. Id. The Third Circuit affirmed the district court's ruling. Id.

Provenzano's factual parallels to the present case, where Defendants embezzled money from a union health care fund they were responsible for managing, and where one of the co-defendants remains employed as the union's secretary general, are obvious. Just as the Third Circuit worried that the Provenzano defendant, if released, would take advantage of his family's continuing control of the union to commit further abuses, so too do we fear that Defendants, if released, would take improper, perhaps criminal, advantage of their existing Union connections. Defendants' connections with Union insiders are likely numerous, however, given that each of them has been involved with the organization in managerial and trust positions for many years.

Defendants' flight risk is also at issue in this motion. Defendants argue that they are a low flight risk because they have

Criminal No. 05-354 (JAF)                                                     -6-

lived in Puerto Rico all their lives, and have extensive familial networks here. Docket Document Nos. 441, 445, 455. Roldán points out that he does not have a passport. Docket Document No. 445. García and Ramos state that even though they have passports, they have been surrendered. Docket Document Nos. 441, 455. Roldán and Ramos argue that their anticipated sentences are so modest – estimated by them to be somewhere between 30 and 54 months – it would not make sense for them to flee. Docket Document Nos. 441, 445. According to Roldán and Ramos, the sixty-month maximum penalty for a violation of 18 U.S.C. § 1073, the statute criminalizing flight, has the potential to double their sentence and no reasonable person would run that risk. Id.

The government does not take issue with Defendants' pronouncements about their extremely strong ties to Puerto Rico, but does disagree with the brevity of the sentences that Roldán and Ramos are predicting they will receive. Docket Document No. 453. The government's current view is that Defendants actually face 292 to 365 months of imprisonment, a far cry from Roldán's and Ramos' expectation that their sentences will land somewhere between 33 and 54 months. Id. The government's belief that Defendants' jail terms will be so long gives rise to its related concern that Defendants, fearful at the prospect, are a heightened flight risk. Id. The government directs us to United States v. Castiello, 878 F.2d 554 (1st Cir. 1989), in support of its argument. Id.

In Castiello, the First Circuit affirmed a district court's decision that a convicted non-citizen defendant facing 97 to 121 months under sentencing guidelines failed to make a clear and convincing showing under § 3143(a) that he was an unlikely flight risk. The district court based its decision on the sizable length of the defendant's likely sentence, his lack of citizenship, and its belief that the defendant's conviction would hold up on appeal.

One obvious and important difference between Castiello and the present case is that Defendants are all U.S. citizens, and not foreign nationals. See also United States v. Parr, 399 F.Supp. 883, 888 (W.D.Tex. 1975)(defendant not released on bail pending appeal when, inter alia, he was a Mexican national by birth and there was, therefore, a risk that he would not be extradited from Mexico in case of flight). Other Castiello flight risk factors, by contrast, are echoed in the present facts. Even though the parties have wildly divergent views on how much jail time the convicted Defendants face, for example, we think it is clear that whoever is right, Defendants do face a lengthy sentence. We furthermore believe, as did the Castiello district court, that Defendants' convictions will hold up on appeal. To these flight risk factors we add one more: Defendants' embezzlement of health care funds is a crime whose substantial proceeds have heightened their flight risk by improving their financial capacity to forfeit bond and/or create a new life outside of the United States. United States v. Londono-Villa, 898

F.2d 328, 329-30 (2nd Cir. 1990)(reversing district court's finding that defendant did not pose a flight risk when the sum of money involved in his crime dwarfed the $1 Million bond).

Defendants argue that their compliance with bail terms all throughout trial evidences that they will continue to comply with bail terms as they await sentencing. Docket Document Nos. 441, 445, 455. We are not convinced, however, that a defendant's compliance with bail terms at trial, when he or she remains hopeful for an acquittal, is a solid predictor of what he or she will do if let out on bail post-conviction, when incarceration is assured. Compare United States v. Lavandier, 14 F. Supp. 2d 169, 174 (D.P.R. 1998)(doubting that trial-stage compliance with bail terms means that post-conviction bail-term compliance is likely), with Harris v. United States, 404 U.S. 1232, 1236 (1971)(J. Douglas, in chambers)(granting defendant's application for bail pending appeal when, inter alia, he had never failed to make a required court appearance while previously out on bail).

Finding Defendants' arguments against flight risk rather weak in light of the factors weighing in favor of flight risk, we do not feel in the end that there is clear and convincing proof that Defendants will present themselves in court on September 22, 2006, as the law requires them to do, should we release them to the general population.

In accordance with the foregoing, we find that Defendants have not presented clear and convincing evidence showing that they would not pose a pecuniary danger to the community or the Union they served

Criminal No. 05-354 (JAF)                                                    -9-

1  if they were released on bail pending sentencing, and that they are
2  not a flight risk, and so we **DENY** Defendants' motion to reinstate
3  bail.
4      **IT IS SO ORDERED.**
5      San Juan, Puerto Rico, this 19th day of July, 2006.

```
6                                            S/José Antonio Fusté
7                                             JOSE ANTONIO FUSTE
8                                             U. S. District Judge
```